# Gould *versus* Langdon *et al.*

*Common Law Remedy not barred by a Conviction under Statute.—Duty of Consolidated Corporations.*

1. Where an action is brought by a plaintiff at common law to recover damages occasioned by a dam belonging to defendants, and subsequently a statutory proceeding was instituted by him against the same defendants to abate the dam by indictment, a conviction therein, in which no damages were given by the jury, will not bar further pursuit of the first action.

2. Where separate statutes are passed each authorizing the erection of a boom, they must be interpreted separately though both become the property of one company: and an act consolidating the two boom companies will not change the liability of either under its act of incorporation to deliver logs at its own boom, the boom in which they were caught.

[Gould *v.* Langdon *et al.*]

ERROR to the Common Pleas of *Lycoming county.*

This was an action of trespass, brought August 8th 1860, by Isaac Gould against Jervis Langdon, Alexander S. Diven, Loren A. Ensworth, and Benjamin Taylor, to recover damages alleged to have been sustained in getting saw-logs over the mill-dam of defendants at Williamsport, his saw-mill being about three miles below that place.

The mills of defendants are situated at Williamsport, deriving all their power from the dam across the West Branch at that place, which water-power has been in use for driving mills at that point upwards of twenty-five years. The south end of the dam consisted for many years of loose stone thrown in and piled up across the stream, which required frequently to be replaced. To obviate this inconvenience, the defendants, being the owners of both shores, in 1854, built a permanent timber-dam across to the southern shore. This dam was two feet and two inches in height, except at the schute, which was one hundred feet in width and thirteen inches in height above the natural flow of the water at that point.

In 1846, an act of the legislature of this Commonwealth was passed, incorporating the Susquehanna Boom Company, and authorizing the erection of a boom, &c., above Williamsport, in the West Branch of the river Susquehanna. Shortly after the passage of this act, the company was organized, who erected a boom in said river, which they have since maintained.

In the year 1848, the Loyalsock Boom Company was incorporated. This company, in the year 1856, erected a boom in said river opposite Williamsport, and below defendants' dam, the lower end of which is about one mile above the mill of plaintiff in error.

On the 21st of April 1858, the legislature passed an act consolidating and erecting both these boom companies into one company, by the name, style, and title of the Susquehanna Boom Company, with all the rights, privileges, and immunities, and subject to all the restrictions contained in the acts incorporating both companies.

The two charters are alike; and by both acts it is made the duty of the boom company to raft all lumber in said booms securely and faithfully, and deliver to the owners below said booms, under the penalties in said acts mentioned.

A few days after the commencement of this suit, viz., on the 28th of August 1860, Isaac Gould presented his petition to the Court of Quarter Sessions of the county, under the second section of the Act of 23d of March, A. D. 1803, praying for the appointment of commissioners to view the dam of defendants, and likewise praying the said court, on conviction of said defendants, to direct the jury to find such damages in favour of the

[Gould *v.* Langdon *et al.*]

said petitioner, Isaac Gould, as he had sustained in consequence of the maintenance of said dam. Setting forth also in his petition substantially the same injury and damages as those declared upon in this suit. Commissioners were appointed by the court to view said dam and compare it with the act, who made report to the November Sessions of the same year; and thereupon the court ordered a bill of indictment to be sent to the grand jury, as required by the Act of Assembly. The grand jury found a "true bill," and named Isaac Gould as the prosecutor.

At the August Sessions 1861, the defendants were tried on the indictment, convicted and sentenced by the court in accordance with the provisions of the act, and the supervisors directed forthwith to remove the obstruction described in the bill of indictment, in such manner as to bring the same within the provisions of the Act of Assembly, &c., at the cost of said defendants; which was done by said supervisors, at expense of the defendants.

After the proceedings above mentioned in the Quarter Sessions were fully ended, Isaac Gould ordered this cause down for trial. A jury was called on the 13th of March 1862, when the plaintiff introduced his evidence, showing his damages commencing on or about the 1st of June 1858, and continuing down to the 8th of August 1860, the time of suit brought.

The plaintiff having given in evidence the record of the proceedings in the Court of Quarter Sessions against the defendants, above referred to, it was deemed unnecessary by defendants' counsel to introduce any evidence to disprove the plaintiff's claim, but they relied solely upon the following points, which were submitted to the court as their defence against plaintiff's recovery in this case:—

1. That the plaintiff in this case has no cause of action against the defendants at common law; the plaintiff, having been the prosecutor in the indictment for nuisance given in evidence on the part of plaintiff in this case, is confined by the statute to the remedy given under the act providing for the erection of milldams in the navigable streams in this Commonwealth, for any damages he may have sustained, according to the evidence in this case; and that the defendants are entitled to their verdict.

2. That the boom company was bound to deliver the logs of the plaintiff below the boom and below the dam of which the plaintiff complains, and the plaintiff was not bound to incur any extra expense or damage in consequence of said dams.

The court answered both these points as requested. Whereupon there was a verdict and judgment entered for the defendants.

The case was then removed into this court by the plaintiff, for whom the charge of the court below affirming the above points was assigned for error.

[*Gould v.* Langdon *et al.*]

*White, Lloyd* and *Wingard,* for plaintiff.—The court below ruled erroneously that the plaintiff had no cause of action at common law, but was confined to the remedy given by the Act of 1803. The 2d section of the Act of 1803 provides a remedy for the removal or alteration of mill-dams put into navigable streams under the authority given by the 1st section of the same act, and provides also that the complainant, under the direction of the court, may recover damages if he has sustained any.  The 3d section provides a remedy where the owner or owners of any raft, &c., shall be delayed in his passage on any stream declared a public highway, by any dam or dams erected in said stream, making it the duty of any justice of the peace in the county where the dam is situated, to cause the owner or owners of such dam to appear before him, and if the parties cannot agree as to the damage, it shall be the duty of the justice to appoint three disinterested freeholders who shall inquire into the loss and make an estimate thereof, and after their award is reported to the justice it shall be his duty to enter judgment thereon, "but if the damages shall be alleged to a greater amount than $50, the same may be sued for and recovered in the Court of Common Pleas where the damages shall have been sustained." It thus provides two remedies for the recovery of damages; one in the Quarter Sessions, and the other in the Common Pleas where the damages exceed $50.  The plaintiff was at liberty to adopt both remedies at the same time, one to abate the nuisance, and the other to recover his damages.  His right of civil action existed at common law, and the 3d section of the act, instead of taking away that right, confirms it.

The complaint under the 2d section may be made by any one, and he can sustain a prosecution to conviction, although he may have suffered no actual damages, with the view of so abating the nuisance that the navigation afterwards may be unimpeded.  So one who has suffered actual damages from the erection and maintenance of such a dam has his right of action at common law, and confirmed by the 3d section of the act, to recover his damages, and at the same time he may have no intention or desire to abate the nuisance. The right of action in the plaintiff having existed at the time this suit was brought at common law, and by virtue of this act it was not abandoned by the subsequent proceedings in the Quarter Sessions, it still continued, and the court erred in answering defendants' first point as requested.

The second point of the defendants was also erroneously answered.  The question whether the boom company was bound, under the act of consolidation, to deliver the logs of the plaintiff at the mouth of the Loyalsock boom below Williamsport, does not arise in this case.  This is not a controversy between the plaintiff and the boom company.  The logs of the plaintiff,

[Gould v. Langdon et al.]

as was shown in evidence, were delivered by the company in rafts at the usual place, the place of delivery before consolidation and since. He had a right to take a delivery of them there if he saw fit, and he had an equal right to float them to his mill without hindrance from any dam or artificial obstruction in the stream. The defendants, admitting that the plaintiff had suffered damages, deny his right to recover, because the boom company were bound by the act of consolidation to deliver his logs at the mouth of the lower boom. There was no evidence before the court and jury that the act of consolidation was ever accepted by either company. The Susquehanna Boom Company did deliver the logs of the plaintiff below their boom, according to the provisions of their charter, and the plaintiff there received them as he was bound to do. But conceding that the two companies were consolidated with the consent of the stockholders, can the defendants set up as a defence the failure of the company to perform their obligations to the plaintiff to protect themselves against the payment of damages occasioned by their dam in the stream? If they can, then they have a defence to every action brought to recover damages for the breaking up of rafts of logs which were never in the boom. The plaintiff does not complain of the company—why should the defendants? Can they shield themselves from the payment of the damages which they occasioned by their dam because the plaintiff took his logs from the company at the usual place of delivery, when they were bound, in their judgment, to deliver them at the lower boom? The plaintiff was injured by the dam of the defendants, but he ought not, they say, to recover from them because the company failed to comply with their obligations to him.

It is denied that the boom company is bound by their charter and by the act of consolidation to deliver plaintiff's logs at the mouth of the lower boom; but admitting that the company is so bound, and that the court was right in answering the defendants' second point as requested, still the plaintiff was entitled to recover. It was shown on the trial of the cause that the dam, as maintained by the defendants, was a nuisance in the river, and it was also shown that the plaintiff, in consequence of the dam, was obliged to pay ten cents per thousand. feet additional for all the logs floated to his mill. This additional sum the plaintiff was fairly entitled to recover in this suit.

*Maynard* and *Willard*, for defendants, argued:—1. That the only reasonable construction which can be given to the second and third sections of the Act of 1803, is, that they furnish a person his choice of remedies, either to bring his suit in the Common Pleas for the recovery of his damages, or to present his petition to the Court of Quarter Sessions and have his damages

7 WR.—24

[Gould *v.* Langdon *et al.*]

assessed by the jury, if he sustained any, as prescribed by the act.

The plaintiff having presented his petition to the Quarter Sessions, and pursued his remedy as prescribed by the second section of the Act of 1803, is precluded and estopped from instituting or pursuing the remedy at common law; and the record of the proceedings in the Quarter Sessions given in evidence by the plaintiff in this cause, said plaintiff being the prosecutor, is a bar to his recovery of damages in this suit which he did or might have claimed in and under that proceeding : citing the Act of 1806, Purdon's Dig. 33, § 5 ; Criswell *v.* Clugh, 3 Watts 330.

There is no case known to the law where two parallel remedies may be pursued by the same plaintiff against the same defendant for the same cause of action.

The statute of 1803 furnished a perfect remedy to the plaintiff in this case which he . has pursued to judgment and execution, thereby imposing upon and collecting from the defendants all the costs incident to his recovery of any damages he sustained, by which recovery both law and justice are satisfied.

It was not therefore error but correct judgment in the court below in answering the defendants' first point in the affirmative as requested.

2. The Act of-Assembly incorporating the boom company in section 5, makes it the duty of said company to deliver all logs below said booms and secure the same there for the owners. This being an incontrovertible fact, the court could draw no other conclusion than that "the plaintiff was not bound to incur any extra expense or damage in consequence of said dam," and therefore there could be no error in pronouncing that conclusion.

The dam of defendants was situated a short distance below the Susquehanna boom, and was included within the chartered limits of the Loyalsock boom; by the act of consolidation these two were made one company, called the Susquehanna Boom Company, "with all the rights, privileges, and immunities, and subject to all the restrictions contained in the two Acts of Assembly," before referred to, creating them, in both of which acts it was the duty of each company to deliver all logs which came into their respective booms below said boom, and secure the same for the owner.

The consolidated company having become subject to this duty, was bound to deliver the logs of plaintiff below the limits of the original Loyalsock boom.

The two companies were consolidated by force of the Act of Assembly, the language being in the present tense, as follows : "That they be and they are hereby consolidated and erected into one company," &c. But if it were necessary to show that these companies accepted and approved the act of consolidation, the evidence of such consent and acceptance was furnished in

[Gould v. Langdon et al.]

the fact that the Susquehanna company, after the act of consolidation was passed, until the present time, have constantly used, occupied, and enjoyed all the rights and privileges secured to each company by the original acts of their incorporation.

The consolidated company has the exclusive possession of all logs within her bounds, with the right to control the same according to the provisions of her charter, and that neither plaintiff nor defendant in this case had the right to enter her boom or exercise any control whatever over the logs within the same. It is therefore impossible to conceive how or why the plaintiff below could have any claim for damages against the defendants in consequence of the boom company having failed to deliver the plaintiff's logs below her booms as she was required to by law.

The opinion of the court was delivered by

LOWRIE, C. J.—We think the court erred in affirming the defendants' points. The Act of 1806, excluding the common law remedies in certain cases, when a special remedy is given by statute, does not apply here, because the common law remedy is expressly saved. The plaintiff adopted first the common law remedy for his damages occasioned by the defendants' dam, and before that case was tried he instituted the statutory proceeding to have the dam abated by indictment, in which he might also have had his damages assessed and collected. Is the conviction in the second proceeding, without any damages appearing to have been asked of the jury, a bar to further pursuit of the first action? We cannot think so.

Though the petition against the dam did ask for damages, yet the indictment alone would regularly go before the jury and be passed on by them; and we do not presume that they passed on the petition for damages, if that would have been irregular. It would have been so in this case, because the defendants could have objected that there was already a valid suit pending for the damages, and that would have abated the claim for damages in the indictment proceeding. And if there was a claim for damages set up before the jury and defeated in the second case, the defendants might have pleaded and shown this in bar of further proceedings in the first case. Neither of these things was done, and we presume that the plaintiff did not claim in the second case what he had sued for in the first. Nor do we see that the boom company was bound to deliver the plaintiff's logs at their lower boom. When the two booms were owned by separate companies, each was bound to deliver the logs at its own boom, that is, at the boom in which they were caught; and we do not see that the act of consolidation changes this. We are to interpret the two statutes authorizing the two booms separately, though both booms now belong to one company.

Judgment reversed, and a new trial awarded.